# In the

# United States Court of Appeals
## For the Seventh Circuit

No. 03-1004

UNITED STATES OF AMERICA,

*Plaintiff -Appellee,*

*v.*

HECTOR SANDOVAL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 99 CR 40019—**Joe Billy McDade**, *Chief Judge.*

ARGUED SEPTEMBER 5, 2003—DECIDED OCTOBER 20, 2003

Before BAUER, POSNER, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* On February 18, 1999, a grand jury returned a two-count indictment charging Hector Sandoval with kidnapping, 18 U.S.C. § 1201(a)(1), and carrying a firearm during and in relation to a violent crime, 18 U.S.C. § 924(c)(1)(A). After a trial on August 28, 2002, a jury convicted Sandoval on both counts and his September 5th motion for a new trial was denied. On December 13, 2002, the district court sentenced the defendant to a 121-month term of imprisonment on the kidnapping count and a 120-month consecutive term of imprisonment on the firearm count.

Sandoval raises four issues on appeal: 1) whether the prosecutor's remarks during opening statement, closing argument, and the sentencing hearing constituted prosecutorial misconduct; 2) whether the district court plainly erred in its use of an interpreter based on The Court Interpreter's Act, 28 U.S.C. § 1827(D)(1); 3) whether the indictment was sufficient as a matter of law; and 4) whether the venue in the Central District of Illinois was proper. For the reasons set forth below, we affirm the judgment of the district court.

**BACKGROUND**

Marcelo Sandoval, the appellant's uncle (hereinafter Marcelo) was an illegal drug supplier. Marcelo had a disagreement with two of his customers, Frank Rivas and Ramon Ceja. Rivas and Ceja were unable to pay Marcelo and were allowed to work off their debt by arranging for a courier to pick up one of Marcelo's drug shipments from Texas and transport it to Chicago. Instead Rivas and Ceja attempted to keep the shipment for themselves. Marcelo and his men kidnapped Rivas and threatened to hold him prisoner until the drug shipment was returned. Rivas, however, was able to communicate with his wife, tell her his whereabouts, and she notified the police. The police ultimately rescued Rivas from Marcelo's house where he was being held by Marcelo and Hector Sandoval. Both men were indicted for kidnapping and carrying a firearm during and in relation to a violent crime. Marcelo was also charged with one count of conspiracy to distribute and possession with intent to distribute marijuana, cocaine, and methamphetamine. Both were found guilty of the charges against them.

One of the issues on appeal regards the use of an uncertified court interpreter. Throughout the trial, an interpreter, Mr. Farquharson, sat at the defense table and interpreted

the proceedings for the defendant. The defense called two witnesses, his girlfriend, Delia Avila, and the defendant himself. Both witnesses spoke Spanish and when Avila testified, an additional interpreter, Mr. Guadalajara, was used to translate her testimony while Mr. Farquharson continued to translate for the defendant.

Avila attempted to provide an alibi for the defendant, testifying that they had taken a walk together in a park in the late afternoon, the day before his arrest. In addition, she claimed she saw him on the day of his arrest but was not sure of the time or place. She testified that when the defendant was not with her, he was at home. The word "home" was focused on during the cross examination. First, she testified that Hector lived with Marcelo, and then changed her story and claimed he was only visiting at Marcelo's house.

At that point, the interpreter interjected and stated that he did not believe the witness was understanding the difference between "live" and "visit". The prosecutor objected and a sidebar discussion ensued. The court determined that even though Mr. Guadalajara was not certified, he was an approved translator on the court's list. The defendant never objected to the use of Mr. Guadalajara.[1]

The court then determined that there was no basis to find that Mr. Guadalajara was translating improperly. He asked that the attorneys make an extra effort to ask simple

---

[1] Before Avila's testimony, the prosecutor expressed his concerns regarding the use of interpreters. He described past situations where the interpreter interjects his own opinions about the witness' testimony or engages in his own dialogue with the witness. The court, at that point, made sure that Mr. Guadalajara understood that he should avoid any inadvertent dialogue with the witnesses and Mr. Guadalajara assured that he understood. (Tr. 365-67)

questions and also admonished Mr. Guadalajara to refrain from interjecting and only to act as a mouthpiece for the witness.

A number of the prosecutor's remarks during opening statement, closing argument, and sentencing are also at issue. We will include a few examples below to aid in our analysis.

## ANALYSIS

### I. Prosecutor's Comments During Opening Statement, Closing Argument, and Sentencing

The first issue we consider is whether comments made by the prosecutor during the opening statement, the closing argument and the sentencing constitute prosecutorial misconduct. To determine whether a prosecutor's comments constitute misconduct, this court uses a two-step inquiry. First, it must be determined whether the comments themselves were improper. *United States v. Anderson*, 303 F.3d 847, 854 (7th Cir. 2002). If improper, we consider whether the statements taken in the context of the entire record, deprived the defendant of a fair trial. *Id.* In doing so, we consider:

> 1) the nature and seriousness of the misconduct; 2) the extent to which the comments were invited by the defense; 3) the extent to which the prejudice was ameliorated by the court's instruction to the jury; 4) the defense's opportunity to counter any prejudice; and 5) the weight of the evidence supporting the conviction.

*Id; (quoting United States v. Amerson*, 185 F.3d 676, 686 (7th Cir. 1999).

Where the defendant fails to object to the remarks at the time they were made, the plain error standard additionally requires that the defendant "establish not only that the

remarks denied him a fair trial, but also that the outcome of the proceedings would have been different absent the remarks." *Id; (quoting United States v. Durham*, 211 F.3d 437, 442 (7th Cir. 2000). When the defendant objects to the remark at the time it was made, we review the trial court's ruling for an abuse of discretion. *United States v. Graham,* 315 F.3d 777, 782 (7th Cir. 2003).

All but one of the claims of misconduct brought by the defendant will be reviewed for plain error because the defense did not object to them at trial. *Id.* Much of the comments the appellant challenges contradict his view of the evidence, but are nonetheless proper. For instance, he argues that the prosecutor's statements that the defendant ran toward the back of the house and stashed his gun when the Chicago police arrived on the scene were unsupported by the evidence. However, the record reveals that two officers as well as Rivas, testified that the two people that ran away were the defendant and Marcelo. The prosecutor's statements during opening, closing, and at sentencing were supported by the evidence or were reasonable inferences from the evidence, and therefore were proper.

Even assuming any of the comments were improper, the jury instructions would have ameliorated any prejudice. Furthermore, the defense had ample opportunity to counter any prejudice. The judge gave the standard jury instruction, reminding the jury members not to consider the attorneys' arguments as evidence and to trust their own memory and view of the evidence. (Tr. 523). In addition, there is no reason to believe that the weight of the evidence does not support the defendant's conviction. The government's comments neither denied the defendant a fair trial nor changed the outcome.

One of the defendant's claims of misconduct was objected to at trial and is therefore reviewed for an abuse of discretion. *Graham*, 315 F.3d at 782. In this instance the prosecu-

tor stated that the Chicago police officers' version of the facts was irreconcilable with that of the defendant's. The prosecutor argued:

> What does the defendant do? He takes off. You know, he says, oh no, we were on our way out the door, going to buy cigarettes. Well, you would have to conclude that the police officers were not telling the truth if you're going to accept the defendant's testimony.

(Tr. 491-92). The defense objected to this comment based on *United States v. Vargus*, which prohibits a prosecutor from arguing to the jury that it must *acquit* if it disbelieves the officers. 583 F.2d 380 (7th Cir. 1978)(emphasis added). That is not the type of argument made here. The prosecutor made a permissible argument, suggesting to the jury that it cannot believe the testimony of the officers and that of the defendant at the same time. *United States v. Amerson*, 185 F.3d 676 (7th Cir. 1999). The prosecutor is entitled to ask the jury to weigh the credibility of the witnesses. *Id.* Therefore, the district court judge did not abuse his discretion by overruling this objection.

## II. Use of the Interpreter

Next we consider the appellant's argument that the district court erred when it used an uncertified and incompetent interpreter at his trial to translate a witness's testimony. However, the Court Interpreter's Act, 28 U.S.C. § 1827, does not require a certified interpreter at trial, nor did the defendant raise an objection at trial. Furthermore, there is no evidence to suggest that the interpreter used was incompetent.

The district court is afforded wide discretion in implementing the Court Interpreter's Act because it is in the best position to evaluate the need for and the performance of interpreters. *United States v. Johnson*, 248 F.3d 655, 661

(7th Cir. 2001). Therefore, its decisions on the appointment and use of interpreters are generally reviewed by this court for an abuse of discretion. *Id.* However, when a defendant fails to object to the interpreter at trial, the alleged error is reviewed on appeal under the plain error standard. *United States v. Osuna*, 189 F.3d 1289, 1292 (10th Cir. 1999); *United States v. Paz*, 981 F.2d 199, 201 (5th Cir. 1992). The law does not support the defendant's challenge to the use of an uncertified interpreter. The Court Interpreter's Act provides in pertinent part:

> The presiding judicial officer . . . shall utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise qualified interpreter, in judicial proceedings instituted by the United States. . . .

28 U.S.C. § 1827(d)(1). Because the defendant failed to raise this objection at the trial level, the district court was not afforded the opportunity to make a record as to whether another certified interpreter was available.

Nevertheless, Mr. Guadalajara, the witness's interpreter, was "otherwise qualified" and was on the court's list as an approved interpreter. (Tr. 385). The transcript reveals that the district court judge specifically found Mr. Guadalajara to be competent. (Tr. 387-88, 391).[2] Under the record, the defendant cannot demonstrate that he would not have been convicted but for the use of the uncertified interpreter. There was no error, plain or otherwise, in the use of the uncertified interpreter.

---

[2] The district court judge had occasion to comment on the interpreter's competence after the prosecution objected to the interpreter's interjection into the witness' testimony. (Tr. 382).

### *III.  The Sufficiency of the Indictment*

The third issue we consider is the sufficiency of the defendant's indictment for kidnapping and for using and carrying a firearm during and in relation to a crime of violence. This court reviews challenges to the sufficiency of an indictment de novo. *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). However, if an indictment has not been challenged at the trial level, it is immune from attack unless it is so obviously defective as not to charge the offense by any reasonable construction. *Id.* (*quoting United States v. Frank Smith*, 223 F.3d 554, 571 (7th Cir. 2000)). In addition, unless there have been extraordinary circumstances, belated challenges to an indictment are construed liberally in favor of validity. *Id.*

To be sufficient, an indictment must: 1) state all the elements of the crime charged, generally by tracking the statutory language of the offense; 2) adequately apprise the defendant of the nature of the charges so that he may prepare a defense; and 3) allow the defendant to plead the judgment as to a bar to any future prosecutions. *See* FED. R. CRIM. P. 7(c)(1); *United States v. Craig Smith*, 230 F.3d 300, 305 (7th Cir. 2000). An indictment is reviewed entirely on a practical basis, rather than in a "hypertechnical manner." *Id.* Although the indictment must provide some means of pinning down the specific conduct at issue in order to apprise the defendant of the charges, the presence or absence of any particular fact need not be dispositive. *Id.*

In the instant case, the defendant does not claim any particular deficiency other than he: "challenges the sufficiency of the indictment as a matter of law in conferring subject matter jurisdiction over the charged offenses." (Def. Br. 34). Pursuant to 18 U.S.C. § 3231, district courts have exclusive subject matter jurisdiction over all offenses against the law of the United States, including kidnapping under 18 U.S.C. § 1201(a)(1) and using or carrying a

firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1). At no time, until this appeal, has the defendant challenged the sufficiency of the indictment. The elements of the offense of kidnapping under 18 U.S.C. § 1201(a)(1) are: (1) that the defendant knowingly and willfully seized, confined, kidnapped, abducted or carried away a person as charged; (2) that the defendant held such a person from the kidnapping; and (3) that such person was thereafter transported in interstate commerce while so confined, or kidnapped. *DeSilva v. Dileonardi*, 125 F.3d 1110, 1114 (7th Cir. 1997). Count one of the indictment alleged all of the elements of the offense by tracking the statutory language:

> Beginning on or about November 30, 1997, and continuing thereafter until on or about December 1, 1997, in the Cental District of Illinois and elsewhere, the defendants Marcelo Sandoval and Hector Sandoval, did knowingly and unlawfully seize, confine, kidnap, abduct, carry away, and hold for ransom, reward, and otherwise, Frank Rivas, and did willfully transport said Frank Rivas in interstate commerce between the State of Iowa and the State of Illinois, in violation of Title 18, United States Code, Section 1201(a)(1), and Title 18 United States Code, Section 2.

To prove a violation of 18 U.S.C. § 924(c)(1)(A), the government must show that the defendant: 1) used a firearm; (2) committed all the acts necessary to be subject to punishment for a crime of violence (here, kidnapping); and 3) used the gun during and in relation to the kidnapping. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). As in Count one, Count two contains all the elements by tracking the language of the statute:

> Beginning on or about November 30, 1997, and continuing thereafter until on or about December 1, 1997, within the Central District of Illinois and elsewhere,

the defendants, Marcelo Sandoval and Hector Sandoval, did knowingly use and carry firearms, that is: (1) a Colt .38 caliber super semiautomatic handgun; and (2) a AA Arms 9mm handgun; during and in relation to a crime of violence which is a felony prosecutable in a court of the United States, that is, as set forth in Count 1 of this Indictment. All in violation of Title 18 United States Code, Sections 924(c) and 2.

Both counts of the defendant's indictment contain sufficient facts to apprise the defendant of the charges against him, and were also sufficiently specific that he could have pleaded a judgment as a bar to future prosecutions. This indictment was free of any defects, such that even the defendant could claim no specific defect or omission in the indictment in this appeal.

### IV.  Proper Venue

Finally, we consider the defendant's challenge of venue. He argues that the Central District of Illinois was an improper venue. However, because part of the charged crime of kidnapping took place in the Central District of Illinois, venue is proper. *United States v. Tingle*, 183 F.3d 719, 726 (7th Cir. 1999). In addition, the venue for the firearm charge is proper wherever venue for the underlying crime of violence was proper. *Rodriguez-Moreno*, 526 U.S. at 281-82.

When reviewing a claim of improper venue, we view the evidence in the light most favorable to the government in determining whether the government showed by a preponderance of the evidence that the crime occurred in the district charged. *Tingle*, 183 F.3d at 726.

The defendant argues that there is no evidence that he participated in the kidnapping until Rivas reached Chicago, the Northern District of Illinois, therefore, venue in the

Central District is improper. In addition, the defendant argues that because venue is improper for the kidnapping charge, the firearm charge has no basis for venue either. Neither argument has merit.

The first argument is without merit because kidnapping is a unitary crime which does not end until the victim is free. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281-82 (1999). "It does not make sense, then, to speak of it in discrete geographic fragments." *Id.* Besides, Congress has specifically provided that a continuing offense, like kidnapping, may be prosecuted "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). The evidence in this case established that Rivas was driven from Davenport, Iowa, across the Mississippi River on a bridge in the Quad Cities, and into the Central District of Illinois, before being taken to Chicago. (Tr. 160-63). Therefore, venue in the Central District is proper.

As for the second argument, the Court held in *Rodriguez-Moreno* that with respect to the § 924(c) firearm count predicated upon the kidnapping as the crime of violence, "where venue is appropriate for the underlying crime of violence, so too it is for the § 924(c)(1) offense." *Id.* at 282. Because venue is proper for the kidnapping charge, it is also proper for the firearm offense.

Accordingly, we AFFIRM the decision of the district court.

A true Copy:

      Teste:

                              _____
                              *Clerk of the United States Court of*
                              *Appeals for the Seventh Circuit*