# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 02-4387

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

WESLEY BOWMAN,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 898—**Elaine E. Bucklo**, *Judge.*

———————

ARGUED SEPTEMBER 3, 2003—DECIDED DECEMBER 23, 2003

———————

Before POSNER, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* On April 4, 2002, a jury convicted Wesley Bowman of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Bowman urges us to grant him a new trial based on various errors he claims prevented the jury from rendering a fair verdict. Because we find no error in the proceedings below, we affirm.

## I. Background

On Thanksgiving Day in 2000, two Chicago police officers stopped Bowman in an alley near his home after observing him driving without headlights after dark. The officer who

approached Bowman in his vehicle asked him to produce his license and proof of insurance. Bowman could not comply, as his license had been revoked, and he was uninsured. Bowman was arrested and searched in preparation for transport to the police station. The search uncovered a handgun in Bowman's jacket pocket and three baggies of marijuana in his pants pocket. The arresting officer's partner, who was out of the squad car and standing behind Bowman and the arresting officer to secure the scene, witnessed everything.

In opposition to this factual scenario, Bowman produced three witnesses at trial, all family or friends, who testified they too saw the arrest and no gun was recovered from Bowman. Absent any physical evidence linking Bowman to the gun, the parties readily admit the case swung on witness credibility. The jury believed the police account over Bowman's witnesses and convicted Bowman on the sole count of the indictment. Bowman unsuccessfully sought a new trial, and this appeal followed. We will relate additional facts as necessary to address Bowman's arguments on appeal.

## II. Analysis

Bowman bases his request for a new trial on four grounds: (1) improper testimony by the government's fingerprint expert; (2) improper rebuttal testimony offered by the government; (3) improper comments by the prosecutors during the opening statement and closing and rebuttal arguments; and (4) insufficient evidence to support the jury's verdict. None have merit.

### A. Fingerprint expert

The government called Richard Canty, a senior fingerprint specialist with the Bureau of Alcohol, Tobacco, and

Firearms, to testify regarding the fingerprint tests he ran on the gun recovered from Bowman. After asking preliminary questions regarding Canty's extensive professional training and experience in recovering and identifying latent fingerprints and palm prints, the government moved to admit Canty as an expert in the field of analysis and comparison of fingerprints and palm prints. Bowman, by counsel, stated he had no objection.

Canty then testified that he recovered a latent thumbprint and palm print from the gun submitted to him for testing, but that neither belonged to Bowman and neither had been positively identified. The thumbprint was recovered from the gun slide and the palm print was found on the gun handle, underneath the grips. The government then asked Canty whether the location of the thumbprint was consistent with someone making the gun "safe" (the arresting officer had previously testified that after he recovered the gun from Bowman's jacket pocket, the officer, without gloves, made the gun "safe" by removing the magazine and a bullet from the chamber). Bowman objected repeatedly to the question and, after a sidebar, the trial judge allowed the testimony. Following foundation questions clarifying that Canty understood what was meant by making the gun "safe," he answered that the location of the unidentified print could be consistent with such an action. Bowman then subjected Canty to vigorous cross- examination.

Bowman argues that the trial court erred in allowing Canty to answer the hypothetical. We review a trial court's evidentiary decisions for abuse of discretion and with great deference. *United States v. Aldaco*, 201 F.3d 979, 985 (7th Cir. 2000). "Accordingly, we will find reversible error only if the district court's decision is not within the range of options from which one would expect a reasonable trial judge to select." *Id.* (quoting *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998)).

Bowman cannot dispute that Canty testified as an expert witness and that experts are allowed to testify in the form of opinions. *See* Fed. R. Evid. 702 ("[a] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion . . . ."). The thrust of Bowman's argument, though, is that Canty, although qualified as an expert in fingerprint identification, was not qualified as an expert in gun handling. Thus, Bowman contends, Canty's testimony that the placement of the thumbprint on the gun appeared consistent with someone making the gun safe was outside his realm of knowledge, not based on sufficient facts, unreliable, and therefore inadmissible. *See* Fed. R. Evid. 702 (allowing expert opinion testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."). We fail to see the distinction.

Canty testified that in his thirty-seven years in law enforcement and the military, he had the opportunity to analyze prints on thousands of guns. He necessarily had to handle all of them. He demonstrated his familiarity with the model in question by showing the jury, without objection, how one would normally hold it and by discussing the areas one would expect to find prints. He testified well within his area of expertise when concluding that, based on his undisputed recovery of a left thumbprint from the right side of the gun slide, the print was deposited in the process of someone making the gun safe. Bowman's argument otherwise borders on spuriousness, and the trial judge acted reasonably in allowing the testimony.[*]

---

[*] Bowman urges that allowing Canty to speculate about how the thumbprint may have been left impermissibly bolstered the officers' testimony that the gun was removed from Bowman and

(continued...)

## B. Rebuttal testimony

The arresting officer and his partner testified that after they pulled Bowman over and discovered that he was driving without a license, insurance, or license plates and was carrying a loaded gun and marijuana, the arresting officer drove Bowman to the police station alone. The partner followed, driving Bowman's car to the police station for impoundment. Two defense witnesses testified later that both police officers drove away in the squad car with Bowman, implying that his car was left behind. On rebuttal, the government called Steven Sorfleet, general superintendent with the City of Chicago Department of Streets and Sanitation, to testify about the procedure for impounding cars and to explain documentation showing that Bowman's car was towed from the police station, not the alley where he was pulled over.

Bowman claims the government called, and the court improperly allowed, the rebuttal witness simply to reiterate the facts of the government's case in chief. There is no merit to Bowman's argument, and we summarily reject it. The trial judge correctly determined that the testimony proffered was proper rebuttal, as the trial transcript bears out.

---

\* (...continued)

made safe upon his arrest and that it created an impermissible inference that the unidentified thumbprint belonged to the arresting officer. Yet, we note that defense counsel went to great lengths on cross-examination to ensure the jury understood that the thumbprint was not identified and that the government requested that Canty compare the prints to Bowman's and no one else's. The government's disinterest in whether the print belonged to the arresting officer, made clear by Bowman's counsel, arguably supported Bowman's overarching theory that the police planted the gun. The jury was free to draw that conclusion. That they did not does not warrant a new trial.

## C.  Prosecutorial misconduct

Bowman contends, for the first time on appeal, that the prosecutors made improper comments during their opening statement and closing and rebuttal arguments. Bowman's failure to raise this issue at trial relegates our review to that of plain error, which requires Bowman to establish "not only that the remarks denied him a fair trial, but also that the outcome of the proceedings would have been different absent the remarks." *United States v. Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003) (quoting *United States v. Anderson*, 303 F.3d 847, 854 (7th Cir. 2002), *cert. denied*, ___ U.S. ___, 123 S.Ct. 1604 (2003)). When evaluating whether the government's comments to the jury reached the level of prosecutorial misconduct, we first examine whether the remarks themselves were improper. *Id.* If improper, we then evaluate the statements in the context of the entire record and determine whether Bowman was deprived of a fair trial. *Id.* In so doing, we consider:

> (1) the nature and seriousness of the misconduct; (2) the extent to which the comments were invited by the defense; (3) the extent to which the prejudice was ameliorated by the court's instruction to the jury; (4) the defense's opportunity to counter any prejudice; and (5) the weight of the evidence supporting the conviction.

*Id.* (quoting *Anderson*, 303 F.3d at 854). We note that "[a]s a general matter, improper comments during closing arguments rarely rise to the level of reversible error," *United States v. Amerson*, 185 F.3d 676, 685-86 (7th Cir. 1999) (quoting *United States v. Wilson*, 985 F.2d 348, 353 (7th Cir. 1993)), and this case is no exception.

Bowman alleges that the prosecutor made numerous inappropriate propensity arguments during the opening statement and closing argument by stating, for example, that Bowman was a convicted felon; that he carried an unregistered, loaded gun with a "bullet in the chamber;"

that he carried marijuana; and by listing the various traffic violations discovered as a result of the police stop. According to Bowman, these comments improperly led the jury to conclude that because he was guilty of past or other crimes, he must be guilty of illegally possessing a firearm. We are unconvinced. All of the statements made by the prosecutor were either based on stipulated facts or facts that were testified to, without objection, during trial. The prosecutor used these facts for permissible purposes—for example, to reiterate the narrative told by the police officers with regard to the traffic stop. *See Sandoval*, 347 F.3d at 631 (finding that the prosecutor's statements during opening, closing and sentencing accurately reflected witness testimony and thus were supported by the evidence and not improper). The prosecutor neither misrepresented the witnesses' testimony or the parties' stipulations, nor asked the jury to draw the inference that because Bowman had admitted problems abiding by the law, he must be guilty of the crime in question. The statements were therefore proper.

Bowman also alleges that the prosecutor improperly inferred that he had "personal knowledge" of the case by characterizing it as "extremely important"and the circumstances leading up to the events of Bowman's arrest as a "recipe for disaster." Neither statement can be fairly recognized as an attempt to make the jury think the prosecutor knew damaging information about Bowman outside of the evidence presented. A prosecutor is entitled to impress upon a jury the seriousness of the crime charged. *United States v. Zylstra*, 713 F.2d 1332, 1340 (7th Cir. 1983). In context, the prosecutor's statement regarding the importance of the case was meant to convey no more than that. The "recipe for disaster" comment, which came in the closing argument following the prosecutor's accurate summary of the facts as testified to by the police officers, is not the type of overt injection of a prosecutor's personal

knowledge condemned by this Court. *Compare, Anderson*, 303 F.3d at 856 (finding a prosecutor's comment on rebuttal that he knew from personal experience that the investigator in question was a very nice guy and would not try to intimidate a witness to be "a classic case of injecting facts within the personal knowledge of the prosecutor into a case, and [ ] blatantly improper."). And, heard in context, it seems unlikely that the jury would have gathered the meaning from the statement that Bowman assigns.

Finally, Bowman makes much of the prosecutor's comments in rebuttal about the credibility of the defense witnesses. As both parties acknowledge, this entire case swung on witness credibility—either the jury would believe the police officers or the defense witnesses in reaching their verdict. The prosecutor's comments, which were based, for example, on testimony regarding the defense witnesses' relationship to Bowman, were proper. *See Sandoval*, 347 F.3d at 632 (stating that a prosecutor is entitled to ask the jury to weigh the credibility of the witnesses); *United States v. Holt*, 817 F.2d 1264, 1275-76 n.10 (7th Cir. 1987) (finding that a prosecutor may comment on the possible interest a witness may have in testifying where such a comment is supported by evidence in the record, even to the point of calling witnesses "liars").

Even if we found that any of the government's comments challenged by Bowman were improper, that error did not deprive Bowman of a fair trial. Specifically, we note that defense counsel emphasized to the jury repeatedly during his opening statement and at the beginning of his closing argument that the arguments were just that—arguments and not evidence. That message was properly repeated by the judge through the jury instructions. Also, defense counsel's opening and closing responded to the prosecutor's comments stressing, for example, that the jury was to evaluate Bowman with a "clean slate" even though he admitted to being a convicted felon and by attacking the police

officers' credibility. Finally, based on our review of the record, there was sufficient evidence to convict Bowman (which we discuss in more detail below), and we cannot say that, absent the alleged prosecutorial misconduct in remarks to the jury, the case would have been decided differently.

## D. Sufficiency of evidence

Bowman bases his insufficient evidence theory on the errors discussed and dismissed above, arguing in conclusory fashion that but for the evidence and argument allowed as a result of those prejudicial errors the jury would have had to acquit. As we have already determined that no prejudicial errors were committed, the argument fails.

In addition, Bowman alleges that since his witnesses directly contradicted the government's, the jury had insufficient evidence to convict. Although Bowman acknowledges that an appellate court will not review witness credibility or reweigh the evidence, it appears this is what he is requesting us to do. We will not. *See United States v. Pulido*, 69 F.3d 192, 205 (7th Cir. 1995) (stating that in reviewing a jury verdict for sufficiency of evidence, "we will not reweigh the evidence or judge the credibility of witnesses. That is the role of the jury, not an appellate court." (citation omitted)).

Bowman also states, without elaboration, that the evidence against him was not overwhelming and thus insufficient to support a conviction. We review such claims in the light most favorable to the government and will overturn a conviction "only if no rational trier of fact could have found [Bowman] guilty beyond a reasonable doubt." *United States v. Hodges*, 315 F.3d 794, 799 (7th Cir.) *cert. denied* ___ U.S. ___, 123 S. Ct. 1943 (2003) (citation omitted). It is clear from the record that the police officers testified consistently that the gun in question was recovered from Bowman. The officers' testimony was supported by the contemporaneous

paperwork generated in the course of Bowman's arrest. There was sufficient evidence to convict Bowman, and the jury's determination stands.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the decision of the trial court.


A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*