# In the
# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 02-1611 & 02-2725

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ALFRED CEBALLOS and JOSE A. TREJO-PASARAN,
also known as Tony,

*Defendants-Appellants.*

---

Appeals from the United States District Court for the
Southern District of Indiana, Evansville Division.
No. 00 CR 26—**Richard L. Young**, *Judge.*

---

ARGUED MAY 28, 2004—DECIDED OCTOBER 13, 2004

---

Before BAUER, RIPPLE, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* In the early months of April 2000, the Drug Enforcement Administration (DEA) was conducting an investigation into a methamphetamine ring in Southern Indiana. During the course of the investigation, the DEA learned of a simultaneous, but separate conspiracy involving a number of individuals in Southern Indiana. The DEA applied for and obtained authority to wire-tap telephone messages made from five target phones during the period from April 3, 2000 through June 16, 2000. During the wire

surveillance, the DEA intercepted numerous drug-related conversations and later seized 800 pounds of marijuana. Based upon evidence obtained from the wire surveillance, the seizure of the marijuana, and the testimony of several cooperating witnesses, the government indicted 27 defendants. Two of the defendants, Alfred Ceballos and Jose Trejo-Pasaran, proceeded to trial on charges of drug trafficking and related crimes. The jury convicted both defendants of all of the charges contained in the indictment. Ceballos and Trejo-Pasaran appeal their convictions. The defendants argue: (1) that the district court committed error when it found that Ceballos' statements at the time of his arrest were voluntary, (2) that the district court abused its discretion in admitting the testimony of Special Agent Michael Kress with respect to his interpretation of drug code language, (3) that the district court was in error in finding that law enforcement agents did not violate the defendants' Fourth Amendment rights by interviewing them about booking information, and (4) that the district court abused its discretion in permitting the use of transcripts of the intercepted telephone conversations with identifying names in the margins of the transcripts. For the reasons stated herein, we affirm the convictions and sentences of Ceballos and Trejo-Pasaran.

## ANALYSIS

### A. Alfred Ceballos' Motion to Suppress his Oral Confession

On November 13, 2001, Ceballos filed a motion to suppress an oral confession that he provided to law enforcement on August 10, 2001. The motion to suppress was identical to a motion to suppress filed in a companion methamphetamine trafficking case. Based on its own ruling in the companion case, the district court denied the motion. This court upheld the district court's denial of Ceballos' motion

to suppress in the methamphetamine trafficking case in *United States v. Ceballos*, 302 F.3d 679, 686 (7th Cir. 2002), *cert. denied*, 537 U.S. 1136 (2003) (*Ceballos I*). For the reasons stated in *Ceballos I*, we affirm the district court's denial of Ceballos' motion to suppress his confession.

### B. Expert Witness Testimony

Next, the defendants argue that the district court abused its discretion in admitting the testimony of Special Agent Michael Kress with respect to his interpretation of drug code language. At trial, the government qualified Agent Kress as an expert concerning the interpretation of drug code language. The district court permitted Agent Kress to interpret drug code language used during intercepted conversations.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993), the district court should be a "gate-keeper" and determine whether the proffered expert testimony is reliable and relevant before accepting a witness as an expert. As we stated in *Ceballos I*, when a defendant challenges the district court's acceptance or rejection of expert testimony, we review de novo whether the testimony was reliable and relevant. If the testimony was reliable and relevant, we review the district court's decision to admit or exclude the testimony for an abuse of discretion. *Id.*

Ceballos and Trejo-Pasaran argue that the district court erred in admitting Kress' testimony because he did not participate in the actual conversations, the intercepted telephone conversations occurred in Spanish, and the code language included simple pronouns such as "it," "both," and "them."

In *Ceballos I*, the government outlined Agent Kress' experience with conducting wiretap investigations. We ruled that the district court did not abuse its discretion in qualifying Agent Kress as an expert and permitting him to interpret code language. We noted that his lack of fluency in Spanish

should not prohibit him from relying upon English translations to interpret drug code language spoken in Spanish and the district court did not abuse its discretion in permitting Agent Kress to offer his opinion on the meaning of the simple pronouns, because the speakers used the pronouns in an ambiguous manner and Agent Kress had vast experience with interpreting drug code language. *Id.* at 688.

As in *Ceballos I*, the government in the present case developed Agent Kress' qualifications through testimony and the district court qualified him as an expert witness. The district court permitted Agent Kress to interpret drug code language used during intercepted telephone conversations even though the conversations needed to be translated from Spanish to English by a bilingual interpreter. And, as in *Ceballos I*, we agree with the district court.

### C. Identification of Defendants' Voices During Post-Arrest Interviews

After Ceballos and Trejo-Pasaran were arrested, a Spanish speaking interpreter, Gloria Rendon, interviewed the defendants in Spanish and asked them the questions necessary to complete booking forms. Based upon these interviews, Rendon compared the voices of Ceballos and Trejo-Pasaran with voices that she had heard during the wire surveillance. Rendon also identified Trejo-Pasaran's voice on a seized audio tape.

The defendants argue that the district court committed clear error in finding that law enforcement agents did not violate Ceballos and Trejo-Pasaran's Fourth Amendment rights by interviewing them for booking information. To assert a Fourth Amendment claim, an appellant must establish a legitimate expectation of privacy. *United States v. Torres*, 32 F.3d 225, 230 (7th Cir. 1994). Obtaining physical evi-

dence from a person may involve a Fourth Amendment violation at two levels. *United States v. Dionisio*, 410 U.S. 1, 8 (1973). These two levels include the seizure of the person and the search and seizure of evidence. *Id.*

In this case, both defendants were arrested pursuant to valid arrest warrants. Because law enforcement legally took both into custody, no Fourth Amendment violation occurred with respect to the initial seizure of their persons. *United States v. Sechrist*, 640 F.2d 81, 85 (7th Cir. 1981) (finding no Fourth Amendment violation where the appellant was detained pending trial.); *United States v. Iacullo*, 226 F.2d 788, 792-93 (7th Cir. 1955) (finding no Fourth Amendment violation where fingerprints were taken after a valid arrest and were used to compare with fingerprints on newspapers used to wrap narcotics).

The subsequent evaluation of the defendants' voices did not violate the Fourth Amendment. The United States Supreme Court has held that people do not have a reasonable expectation of privacy in their voices. *Dionisio*, 410 U.S. at 14. Moreover, federal courts have consistently recognized that law enforcement officers may question an arrested person to collect booking information incident to processing him or her for arrest and custody. *United States v. Kane*, 726 F.2d 344, 349 (7th Cir. 1984).

In addition, the comparison of the defendants' voices with those on the tapes falls within the "plain hearing" exception to the search warrant requirement. The plain view exception to the search requirement applies where an officer is: (1) lawfully present, (2) sees something in plain view not named in the warrant, and (3) whose incriminating nature is immediately present. *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir. 1997). We have recognized that the plain view doctrine applied in the context of overheard speech, creating a "plain hearing" doctrine. *United States v. Ramirez*, 112 F.3d 849, 851 (7th Cir. 1997). Because the defendants did

not have a reasonable expectation of privacy in their voices during their booking interviews, their voices fall within the exception of the plain hearing exception to the search warrant requirement; the district court did not err in finding their Fourth Amendment claim invalid.

### D. Use of Transcripts Bearing Speakers' Names in Margins

Finally, the defendants argue that the district court erred in admitting transcripts with the names of the speakers written in the margins and then allowing the jury to use the transcripts during their deliberations. At trial, the government presented the testimony of lay witnesses to identify voices heard in intercepted conversations. Agent Kress identified Ceballos' voice based upon his personal interview with Ceballos. Gloria Rendon, the Spanish interpreter, identified Ceballos' voice based upon her personal interview with Ceballos. Rendon identified Trejo-Pasaran based upon her review of an audio tape of his voice and her interview with him. The government played the intercepted conversation during the trial and introduced English transcripts of the conversation which identified the speakers in the margins. The district court specifically instructed the jury that the defendants contested their voice identifications.

In *United States v. Breland*, we held there was no abuse of discretion when the district court permitted transcripts with names in the margins to go with the jury during deliberations because the court had specifically instructed the jury that identities of the speakers were contested. 356 F.3d 787, 794-95 (7th Cir. 2004). In this case, the district court properly instructed the jury and so there was no abuse of discretion.

For the reasons stated herein, we AFFIRM.

A true Copy:

    Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*