# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 02-2626

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

HENRY MCKEE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 00 CR 878—**James B. Moran,** *Judge.*

_____

ARGUED FEBRUARY 12, 2004—DECIDED NOVEMBER 12, 2004

_____

Before CUDAHY, COFFEY, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Henry McKee was charged in a one-count indictment with conspiring to distribute and to possess with intent to distribute the drug known as ecstasy in violation of 21 U.S.C. §§ 846 and 841(a)(1). After a four-day trial, a jury found McKee guilty. The court sentenced McKee to 112 months' imprisonment and 3 years' supervised release. McKee appeals, and we affirm his conviction.

I.

McKee was part of a conspiracy to smuggle ecstasy from the Netherlands to Chicago. His co-conspirators, Michael MacIntosh and Saviera MacNac, lived in the Netherlands and arranged for couriers to deliver ecstasy to Chicago. McKee's role was to provide housing, transportation, and telephones for the couriers while they were in Chicago. The conspiracy was discovered in October 2000 when customs officers at O'Hare airport intercepted two couriers, Milva Gosepa and Judith Ruimwijk, carrying a package of approximately 11,000 ecstasy pills. Gosepa and Ruimwijk were arrested, and Ruimwijk agreed to cooperate with law enforcement by participating in a controlled delivery of counterfeit pills.

On the day that the controlled delivery was to take place, law enforcement agents set up audio and video surveillance in Ruimwijk's hotel room. Ruimwijk then called MacNac in the Netherlands, and told her that McKee would be taking her to another hotel. That night McKee went to the hotel to pick up Ruimwijk, Gosepa, and the ecstasy. After McKee entered Ruimwijk's hotel room, he asked about her flight and whether she had been scared. After telling Ruimwijk that he had to take her and Gosepa to another hotel, McKee opened the bag containing the ecstasy, took out a pill, and asked Ruimwijk if it was "better." The agents then entered the room and arrested McKee. When they searched McKee's Lexus, the agents found a loaded semi-automatic handgun in the unlocked glove compartment.

At trial the government presented evidence that McKee had rented the apartment used to house Ruimwijk, another courier, and their ecstasy during a smuggling trip in August 2000, and had secured a telephone and rented a car for another co-conspirator. The government also presented the recorded telephone conversation between Ruimwijk and MacNac, a video recording of McKee's meeting with Ruimwijk in the hotel room and a transcript of their conversation, the drugs, and the gun found in McKee's car. Finally, Ruimwijk

testified that she had met McKee during a prior smuggling trip when he came to the apartment he had rented for the couriers and asked MacIntoch if he could have some of the ecstasy to sell.

## II.

As to his conviction, McKee first argues that the court erred by allowing the prosecutors (1) to question him regarding the credibility of other witnesses, (2) to characterize him as a liar, and (3) to vouch for the credibility of government witnesses in their closing arguments. Because McKee did not object at trial to any of the prosecutor's statements, we review for plain error. Fed. R. Crim. P. 52(b); *United States v. Carrera*, 259 F.3d 818, 828 (7th Cir. 2001). We use a two-part inquiry in reviewing the prosecutors' remarks. First, we determine whether the comments, looked at in isolation, were improper. *United States v. Anderson,* 303 F.3d 847, 854 (7th Cir. 2002). If the remarks were improper, we consider whether the statements taken in the context of the entire record deprived the defendant of a fair trial. *Id.* In other words, we ask whether the misconduct " 'caused the jury to reach a verdict of guilty when otherwise it would have reached a verdict of not guilty.' " *United States v. Harris*, 271 F.3d 690, 699 (7th Cir. 2001) (quoting *United States v. Morgan*, 113 F.3d 85, 89 (7th Cir. 1997)). In making this determination, we place considerable emphasis on (1) the curative effect of jury instructions, including the trial court's direct admonition that the arguments of the attorneys are not to be considered evidence, and (2) the weight of the evidence of guilt contained in the entire record. *Id.* at 702.

The government acknowledges that the prosecutor erred by asking McKee whether other witnesses had lied, noting that "it is improper to ask one witness to comment on the veracity of the testimony of another witness." *United States v. Freitag*, 230 F.3d 1019, 1024 (7th Cir. 2000). With regard

to the other comments, a prosecutor may properly comment on the credibility of witnesses as long as the comment reflects reasonable inferences drawn from the evidence presented at trial rather than personal opinion. *See United States v. Morgan*, 113 F.3d 85, 89 (7th Cir. 1997). Because we are convinced that the comments did not deprive McKee of a fair trial, we will assume without deciding that the prosecutors improperly referred to McKee as a liar and improperly bolstered the government witnesses.

Considering all of the allegedly improper statements, there is no reason to believe that the outcome of the trial would have been different absent those statements. The court's instructions to the jury were sufficient to ameliorate any prejudice. Prior to closing arguments, the court instructed the jury as follows: "The closing arguments aren't evidence. They are what the attorneys wish to tell you as to what they think the evidence did show or didn't show to help you reach a conclusion." After closing arguments and before the start of jury deliberations, the court instructed the jury again: "You are to decide whether the testimony of each of the witnesses is truthful and accurate in part, in whole, or not at all, as well as what weight if any you give to the testimony of each witness." And the court again instructed the jury that the lawyers' questions, objections, and statements were not evidence. Further, the weight of the evidence persuades us that the improper comments did not deprive McKee of a fair trial. The government presented the jury with overwhelming evidence of McKee's guilt, including several witnesses who testified consistently regarding McKee's role in the conspiracy and the video recording from the hotel room that showed him inspecting the drugs. This evidence specifically contradicted McKee's testimony that his contact with the co-conspirators was merely social. As a result, we find no plain error.

McKee also argues that the district court erred by instructing the jury that it "should" acquit rather than it

"must" acquit if the government failed to meet its burden. Again, McKee did not object so we review for plain error. *See United States v. Mansoori*, 304 F.3d 635, 655 (7th Cir. 2002). We have repeatedly held that the use of "should" rather than "must" in this context is not plainly erroneous. *See id.* at 655-56; *United States v. Ray*, 238 F.3d 828, 834-35 (7th Cir. 2001); *United States v. Kerley*, 838 F.2d 932, 940 (7th Cir. 1988). Although McKee asks us to reconsider these decisions, we decline to do so.

Turning to his sentence, McKee argues that the district court erred by denying him a two-level reduction for being a minor participant under U.S.S.G. § 3B1.2. We review the denial of a minor-participant reduction for clear error. *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959 (7th Cir. 2004). It is the defendant's burden to show by a preponderance of the evidence that he was substantially less culpable than other participants. *See* U.S.S.G. § 3B1.2, comment. (n.3); *United States v. Corral*, 324 F.3d 866, 874 (7th Cir. 2003). And sentencing courts are to apply this reduction infrequently. *See Corral,* 324 F.3d at 874.

As McKee sees things, he was entitled to the reduction because "all of the other participants were higher up on the food chain than he was." However, where each person was an "essential component" in the conspiracy, the fact that other members of the conspiracy were more involved does not entitle a defendant to a reduction in the offense level. *See United States v. Castillo*, 148 F.3d 770, 776 (7th Cir. 1998). Moreover, the court found that McKee was "an average participant" because of his role in "getting the cars and the apartment and the telephone and making the contact." We therefore conclude that the district court did not clearly err in denying McKee a sentence reduction under § 3B1.2(b).

Finally, in his initial brief McKee argued that it was clearly improbable that the gun found in his Lexus was connected to the offense and thus the district court erred when it increased his offense level pursuant to U.S.S.G.

§ 2D1.1(b)(1). After oral argument, however, McKee submitted supplemental authority pursuant to Circuit Rule 28(e), contending that this upward adjustment and another increase under U.S.S.G. § 3C1.1 for obstruction of justice were improper in light of *Blakely v. Washington*, 124 S. Ct. 2531 (2004). Under *Blakely* as interpreted in *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), *cert. granted*, 2004 WL 1713654 (U.S. Aug. 2, 2004) (No. 04-104), a defendant has the right to have a jury decide factual issues that will increase his sentence. *See United States v. Ohlinger,* 377 F.3d 785, 787 (7th Cir. 2004). Here, the district court made factual findings that went beyond the jury's findings and McKee's admitted conduct when it determined that McKee possessed a firearm in connection with the drug conspiracy, *see* U.S.S.G. § 2D1.1(b)(1), and obstructed justice, *see id.* § 3C1.1. We therefore remand McKee's case for resentencing in light of *Booker.*

The Supreme Court has granted certiorari in *Booker,* whereupon in the coming weeks it will determine the application of *Blakely* to the federal sentencing guidelines. Therefore, we will stay our mandate until *Booker* is decided. Within fourteen days of the Supreme Court's decision in *Booker,* both parties may submit a memorandum setting forth their views on the application of that decision to this case.

### III.

For the reasons stated above, we AFFIRM the judgment of conviction, VACATE the sentence, and REMAND the case for resentencing. This court's mandate is stayed pending the Supreme Court's decision in *Booker.*

A true Copy:

Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***