In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-3248

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN CARLOS GONZALEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 623—**Ronald A. Guzman**, *Judge*.

_____

ARGUED MAY 8, 2008—DECIDED JULY 15, 2008

_____

Before COFFEY, RIPPLE and SYKES, *Circuit Judges*.

RIPPLE, *Circuit Judge*. Juan Gonzalez pleaded guilty to one count of attempting to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 87 months' imprisonment, followed by five years' supervised release. On appeal, Mr. Gonzalez contends that the district court clearly erred when it denied him a sentence reduction under U.S.S.G. § 3B1.2 for minor participation in the offense. Because Mr. Gonzalez has not

carried his burden of proving that his role in the offense was minor in comparison to that of his associates, we affirm the judgment of the district court.

# I

# BACKGROUND

In Texas, an informant for Immigration and Customs Enforcement ("ICE") received 27.75 kilograms of smuggled cocaine from two brothers, Ruben and Eric Aguas. The informant then drove to Chicago, the location of a scheduled drug deal. Once there, ICE agents replaced the cocaine with a non-cocaine substance resembling cocaine, obtained a tracking order for the informant's truck and installed trigger devices in the containers of fake cocaine. The agents then followed the informant to the site of the drug buy and observed Mr. Gonzalez transfer the fake cocaine from the informant's truck to the trunk of his own car. Mr. Gonzalez then placed $89,785 in cash in the informant's truck. Agents followed Mr. Gonzalez to his home, where they watched him bring the bags of fake cocaine inside. Shortly thereafter, they heard the alarm from the trigger device indicating that a suitcase containing the fake cocaine had been opened.

Authorities then arrested Mr. Gonzalez and, with his consent, searched his apartment. Mr. Gonzalez told them that he rented and lived in the apartment. Authorities discovered the fake cocaine, 248 grams of real cocaine, tape and plastic wrap, a blender with cocaine residue, three digital scales, weights totaling 200 grams, sandwich bags, air freshener cans, Seal-a-Meal bags, acetone, disposable respirators and a drug ledger. These items were in a bedroom that otherwise contained only a mattress and window coverings.

Mr. Gonzalez initially told authorities that he did not know that he was going to pick up cocaine when he drove to the informant's truck, but he later acknowledged that he had known that he would be picking up cocaine. Mr. Gonzalez also admitted that he had met the informant at the direction of a third person, but he refused to identify that person. Mr. Gonzalez pleaded guilty to the charges.

Mr. Gonzalez's presence report ("PSR") recommended a base offense level of 34, *see* U.S.S.G. § 2D1.1(c)(4), and a three-level reduction for acceptance of responsibility, *see id.* § 3E1.1. Mr. Gonzalez's placement in criminal history category I, combined with his total offense level of 31, yielded an advisory guidelines range of 108 to 135 months' imprisonment. The PSR noted that, because each offense carried a mandatory minimum sentence of 10 years, Mr. Gonzalez's restricted guidelines range was 120 to 135 months' imprisonment. *See* 21 U.S.C. §§ 846, 841(b)(1)(A); U.S.S.G. § 5G1.1(c)(2).

Mr. Gonzalez objected to the PSR's classification of his role in the offense as that of an "average" participant. He submitted that he should receive a reduction under U.S.S.G. § 3B1.2 for being a minor participant. Mr. Gonzalez contended that he had been less involved than an average participant because he had not known the quantity of cocaine he was to pick up and had little prior experience with drug deals. Mr. Gonzalez asserted that he was far less culpable than Ruben and Eric Aguas, who had obtained the cocaine and gave it to the informant, and the "padrino," or "godfather," an associate of the Aguas brothers who had helped plan the delivery. R.28. According to Mr. Gonzalez, the conversation that he had with the informant during the delivery, which was re-

corded by authorities, made clear that this had been his first drug deal. The informant called the "godfather" when Mr. Gonzalez arrived, and the "godfather" told him that it was okay to leave the "food" with Mr. Gonzalez. *Id*. Mr. Gonzalez's only role in the scheme, according to him, was that of a courier and guardian of the stash house, his apartment. In exchange for taking the cocaine back to the stash house, Mr. Gonzalez was to receive only $1,000, a small share of the total profit to be made on the transaction. He had no customers of his own and no role in negotiating the price, quantity or transportation of the drugs. Mr. Gonzalez also argued that he should be found eligible for the "safety valve" provision of U.S.S.G. § 5C1.2 because he truthfully provided to the Government all of the information he had, an argument with which the Government agreed.

At the sentencing hearing, Mr. Gonzalez pressed these two objections to the PSR. With respect to his section 3B1.2 claim, Mr. Gonzalez contended at the sentencing hearing that another person stayed in his apartment and was responsible for cutting and distributing the drugs. According to Mr. Gonzalez, he was merely the "babysitter" of the stash house. Sent. Tr. 7. The Government responded that there was only one mattress in the apartment and that the bedroom was full of drug paraphernalia. The Government also noted that Mr. Gonzalez apparently had authority to handle the drugs because he opened the bag full of fake cocaine, setting off the trigger device, while no one else was present. The Government further submitted that the recorded conversation with the informant clearly showed that Mr. Gonzalez was familiar with the drug code because he used and understood the terms "godfather" and "food." *Id*. Additionally, the

"godfather" on the other end of the line confirmed that Mr. Gonzalez could be trusted with the drugs. *Id.*

The district court considered these arguments and decided that Mr. Gonzalez did not qualify for a minor-participant reduction. The court observed that, "unless you are pretty darn sure you are authorized to do so, when you are dealing with a shipment of drugs on consignment, you don't fool around with the package, not unless you want to risk your life." *Id.* at 9. The district court agreed that Mr. Gonzalez qualified for the safety-valve reduction, which brought Mr. Gonzalez's total offense level down to 29, with a new advisory guidelines range of 87 to 108 months' imprisonment. The safety-valve reduction also gave the court the option of sentencing below the statutory minimum. The court then sentenced Mr. Gonzalez at the bottom of the resulting advisory guidelines range, to a sentence of 87 months' imprisonment.

## II

## DISCUSSION

### A. Standard of Review

We review for clear error a district court's finding of fact regarding a defendant's level of participation in an offense. *United States v. Olivas-Ramirez*, 487 F.3d 512, 516 (7th Cir. 2007). We will find clear error only when we are "left with a definite and firm conviction that a mistake has been committed." *Id.* (quotation omitted). We seldom reverse a district court's denial of a petitioner's request for a minor-participant reduction. *United States v. Mendoza*, 457 F.3d 726, 729 (7th Cir. 2006).

**B. Analysis**

On appeal, Mr. Gonzalez argues that the district court clearly erred when it denied him a downward adjustment under U.S.S.G. § 3B1.2(b) for his minor role in the offense. Mr. Gonzalez contends that his actions amounted only to joint occupancy of a stash house and participation in a single drug transaction at the direction of another. He asserts that he was not the "actual storer" or buyer of drugs because his name was not on the apartment's lease. Appellant's Br. at 7. He also claims ignorance of the "basic facts" of the transaction. *Id*. Mr. Gonzalez contends that his role was minor in comparison to others involved in the scheme who had negotiated and brokered deals and arranged transportation. He, by contrast, had no decision-making power or control over the deals.

The Sentencing Guidelines allow a defendant's offense level to be reduced by two levels when the defendant is a "minor participant" in the offense. *United States v. Emerson*, 501 F.3d 804, 815 (7th Cir. 2007); U.S.S.G. § 3B1.2. "The relevant commentary defines 'minor participant' as a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant and who is less culpable than most other participants, but whose role could not be described as minimal." *Emerson*, 501 F.3d at 815 (internal quotation marks omitted); *see also* U.S.S.G. § 3B1.2 app. nn.3(A), 5. "However, where each person was an 'essential component' in the conspiracy, the fact that other members of the conspiracy were more involved does not entitle a defendant to a reduction in the offense level." *United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007) (quoting *United States v. McKee*, 389 F.3d 697, 700 (7th Cir. 2004)). A defen-

dant's "role should be compared to that of the average member of the conspiracy, not with the leaders." *Id.* The defendant must show by a preponderance of the evidence that he is entitled to a minor participant adjustment under U.S.S.G. § 3B1.2. *McKee*, 389 F.3d at 700.

Mr. Gonzalez has not succeeded in showing that the district court clearly erred when it denied his motion for a section 3B1.2 reduction. Mr. Gonzalez had the burden of proving to the district court that his role in the offense was minor in comparison to that of others involved in the same offense. *Id.* There is little evidence in the record about others' roles in the drug scheme. There is, however, evidence to support the conclusion that Mr. Gonzalez's role in the offense was integral to the operation: Mr. Gonzalez was trusted to carry a large quantity of cash, pick up a large quantity of drugs from a dealer by himself, transport the drugs in his own car and store them in his own home. He also apparently had the authority to inspect the drugs because he opened the bag that contained them. His apartment was full of drug paraphernalia, and he understood insider jargon, like the term "godfather." With virtually no evidence in the record to show that Mr. Gonzalez's role was minor in comparison to that of his associates, Mr. Gonzalez has not demonstrated that there was clear error. *See United States v. Laufle*, 433 F.3d 981, 985-86 (7th Cir. 2006) (affirming the denial of a section 3B1.2 reduction where the defendant's activities typified an "average" participant, including storing marijuana at a house and delivering shipments); *United States v. Parra*, 402 F.3d 752, 763 (7th Cir. 2005) (noting that a defendant will not receive a reduction in his offense level if he had an integral role assisting in the enterprise, even if he was not the driving

force behind it); *United States v. McGee*, 408 F.3d 966, 987 (7th Cir. 2005) (holding that the defendants played "average" roles and did not merit reductions when they served as middlemen and gofers); *United States v. Gonzalez*, 319 F.3d 291, 300 (7th Cir. 2003) (finding no clear error where the district court denied a mitigating role adjustment to a defendant who "executed the important task of securing the warehouse for delivery" of cocaine).

The cases upon which Mr. Gonzalez relies do not support reversing the district court's decision. In *United States v. Johnson*, 997 F.2d 248, 253 (7th Cir. 1993), the defendant had been given a 3-level reduction for his role in the offense. On appeal, he argued that he deserved a 4-level reduction. *Id.* We disagreed and upheld the district court's sentencing determination. *Id*. In that case, we were asked to rule that a district court had clearly erred in determining that a defendant was a minor, but not a minimal, participant in a drug enterprise in which he had been "a trusted and active member of the conspiracy who not only *assisted* in harvesting large quantities of marijuana (3000-4000 lbs.) but also was allowed to receive and deliver a substantial money order in payment for a drug shipment." *Id.* (emphasis added). In rejecting the defendant's contention, we simply said that the district court's determination that the defendant's conduct was between that of a minimal and a minor participant was not clearly erroneous. Such a decision is hardly a ruling that the defendant deserved, as a matter of law, the designation of minor participant. It was simply an appellate determination that, on the record in that case, the district court had not erred in characterizing the defendant's conduct as that of a minor participant. Similarly, in *United States v. Hagan*, 913 F.2d 1278, 1282-83

(7th Cir. 1990), we rejected a defendant's contention on appeal that he deserved a 4-level reduction and upheld the district court's decision to grant a 2-level reduction. We upheld a district court's determination that a defendant who had helped cultivate a marijuana crop for two weeks was not a minimal participant. In that case, as in *Jackson*, the issue before us was whether the district court had clearly erred in holding that the defendant was a minor, but not a minimal, participant. We were not asked to address squarely whether the minor designation was deserved. In any event, the obvious difference between the conduct in *Hagen* and the conduct in the present case renders it of no use to Mr. Gonzalez.

Mr. Gonzalez also relies upon *United States v. Hunte*, 196 F.3d 687, 689 (7th Cir. 1999), in which we reversed the district court's denial of a motion for a section 3B1.2 reduction. This case hardly controls the present situation. In that case, Hunte was merely the girlfriend of the organizer of the drug conspiracy. *Id.* She accompanied him on a journey across several states to purchase marijuana for distribution, but she apparently just went along for the ride and did not stand to profit in any way. *Id.* In fact, the organizer took steps to keep her away from any actual drug dealing activities and also paid all expenses throughout the trip. *Id.* at 689-90. Hunte therefore was not involved in the actual drug-dealing activities, was not present when the drugs were being weighed and packaged, and the only contact she had with the marijuana was through her personal use. *Id*. at 689-90. By contrast, Mr. Gonzalez was permitted by those running the operation to guard the drugs and conduct the actual drug transaction. Moreover, he apparently had the authority to open the package and check on the delivery. He maintained a

stash house and expected to receive payment for his efforts on behalf of the scheme. These significant differences support the district court's finding that Mr. Gonzalez was not entitled to a section 3B1.2 reduction.

### Conclusion

The district court did not commit error when it determined that Mr. Gonzalez was not a minor participant in the offense. Accordingly, we affirm the judgment of the district court.

AFFIRMED