**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 2, 2010
Decided September 23, 2010

**Before**

DIANE P. WOOD, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-2027

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 07 CR 682-3 |
| ROBERTO TOSCANO, *Defendant-Appellant.* | John W. Darrah, *Judge.* |

**O R D E R**

Roberto Toscano pleaded guilty to conspiring to possess cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He qualified for the safety-valve provision and was sentenced below the statutory minimum to 108 months' imprisonment. On appeal he challenges the denial of a mitigating role reduction in his guidelines offense level, as well as the reasonableness of his sentence. We affirm the sentence.

Toscano was snared during an investigation of Pedro Victoria, a suspected high-level drug dealer. Toscano admitted in his plea agreement that Victoria, one of his codefendants in this case, called him on the morning of the arrest to arrange for the transfer of 80 kilograms of cocaine that had been stored overnight in Toscano's sport utility vehicle ("SUV"). Victoria was followed by agents from the Drug Enforcement Administration as he drove to Toscano's house. Victoria was accompanied by codefendants Ruben Villarreal and Vincent Calero, who were driving Villarreal's vehicle. The plan was for Villarreal and Victoria to pick up the cocaine and transfer it to Villarreal's vehicle while Calero acted as the lookout. They would then transport the cocaine to an unidentified dealer who had bought it from Victoria. When they arrived at Toscano's residence, Calero sat in Villarreal's vehicle while Villarreal, Victoria, and Toscano began unloading the drugs from Toscano's SUV. The agents arrested them in the middle of the transfer, and all four men later pleaded guilty to participating in a drug conspiracy.

At sentencing, Toscano sought a mitigating role reduction under U.S.S.G. § 3B1.2. He argued that he was substantially less culpable than the other participants because he did not know in advance how much cocaine Victoria would give him and he had no role in the planning or negotiation of the anticipated sale. Toscano asserted that he and Victoria had a prior business relationship (he had done drywall work for Victoria's construction company) which turned illegal when Victoria asked him the night before the arrest if he would collect money for him and deliver a small amount of drugs. Apparently, Toscano agreed to store the drugs at his house and told Victoria to put the drugs in his vehicle if he was not at home.

Toscano claimed that once he saw the large amount of cocaine in his SUV, he called Victoria and said that he would not deliver such a huge quantity. According to Toscano, this refusal prompted Victoria to come remove the drugs the following morning from Toscano's SUV, whereupon they were arrested.

The district court found that Toscano was not substantially less culpable than his co-conspirators, which precluded the application of the mitigating role reduction. The court noted that there was a discrepancy between Toscano's testimony and the presentence report. At the hearing, Toscano indicated that he called Victoria to tell him that he would not be able to deliver such a large amount of drugs, but the PSR stated that it was Victoria who initiated the phone call that morning to tell Toscano that he would be picking up the drugs. In addition, the court contrasted Toscano's involvement with that of Calero, who had received a three-level minor role reduction because he only functioned as the lookout and did not assist with the unloading of the drugs. The district court found that Toscano, on the other hand, allowed Victoria to store drugs overnight in his SUV, and after seeing such a large quantity of cocaine, "didn't walk away or anything," but instead helped Victoria and Villarreal transfer the drugs to Villarreal's car for further distribution.

The court proceeded to analyze the 18 U.S.C. § 3553(a) factors, and after reviewing mitigating evidence of Toscano's difficult childhood and his positive letters of support, the court sentenced Toscano to 108 months' imprisonment. The district court stated that the

sentence was necessary to promote respect for the law, to deter others from distributing drugs, and to reflect the large amount of cocaine involved.

On appeal, Toscano focuses on the district court's denial of a mitigating role reduction, arguing that the court did not fully consider the circumstances surrounding the offense when evaluating the extent of his participation. He asserts that the district court overlooked his lack of involvement in the cocaine acquisition, the eventual sale, and the "extensive" conspiracy between Victoria and the other dealer.

Toscano bore the burden in the district court of proving that he was "substantially less culpable than the average participant" and therefore entitled to a mitigating role reduction. U.S.S.G. § 3B1.2 cmt. n.3(A); *see United States v. Sandoval-Vasquez*, 435 F.3d 739, 745 (7th Cir. 2006). Section 3B1.2 of the sentencing guidelines provides that a defendant's offense level may be decreased by two to four levels if he played a mitigating role in the offense. If the defendant was a "minimal participant," he should receive a four-level decrease, U.S.S.G. § 3B1.2(a); and if he was a "minor participant," a two-level decrease, *id*. § 3B1.2(a).[1] "The difference between minor and minimal depends on how the sentencing judge views the guilty conduct of the other participants. The former requires 'less culpable than most' while the latter asks for 'plainly among the least culpable.'" *United States v. Hunte,* 196 F.3d 687, 694 (7th Cir. 1999). A court determines the extent of a defendant's role based on all of his relevant conduct, not just the acts

---

[1] In cases in which the defendant's role "fall[s] between (a) and (b)," the offense level may be decreased by three levels. U.S.S.G. § 3B1.2.

cited in the count of conviction.  U.S.S.G. ch. 3, pt. B, introductory cmt.; *United States v. Blaylock*, 413 F.3d 616, 618 (7th Cir. 2005).  We review the denial of a mitigating role reduction for clear error.  *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959 (7th Cir. 2004).

Here, the district court did not clearly err by denying Toscano a mitigating role reduction.  Toscano failed to show that he was substantially less culpable than the average participant in the crime, and the levels of culpability attributable to Victoria and Calero (as the conspiracy's leader and minor participant, respectively) are not valid bases for comparison. A defendant's culpability depends on his participation relative to the average participant in his conspiracy, not to that of the conspiracy's leader or to that of the average participant in some other hypothetical conspiracy. *See United States v. Lopez*, 545 F.3d 515, 517 (7th Cir. 2008); *United States v. Gallardo*, 497 F.3d 727, 741 (7th Cir. 2007); *United States v. Almanza*, 225 F.3d 845, 847 (7th Cir. 2000).  Under the circumstances of this offense, it appears that Villarreal's role (assisting with the removal of the drugs from Toscano's SUV and placing them into his own vehicle) is most comparable to Toscano's; notably, like Toscano, Villarreal did not receive a mitigating role reduction.

Even though Toscano did not act as a manager of the conspiracy, the district court properly determined that Toscano's role was "essential" to the distribution process, which we have held to be a valid basis for the denial of a mitigating role reduction.  *See United States v. Gonzalez,* 534 F.3d 613, 616 (7th Cir. 2008) ("[W]here each person was an 'essential component' in the conspiracy, the fact that other members of the conspiracy were more involved does not

entitle a defendant to a reduction in the offense level."). Therefore, the court did not err in finding the storage and unloading sufficient to deny Toscano a mitigating role reduction.

Toscano also challenges the reasonableness of his sentence. He contends that the district court inappropriately overemphasized the need for deterrence and that the 108-month sentence was greater than necessary to fulfill the purposes set forth in 18 U.S.C. § 3553(a). In an attempt to justify a lower sentence, Toscano cites his steady employment history, his commitment to his family, his lack of any significant criminal history, and his limited role in the offense. Simply put, he asks this court for "leniency" in applying the statutory sentencing factors.

We review the reasonableness of a district court's chosen sentence for abuse of discretion. *United States v. Poetz*, 582 F.3d 835, 837 (7th Cir. 2009). Because Toscano's sentence falls within a properly calculated guidelines range, we apply a presumption of reasonableness that Toscano can rebut only by showing that the district court did not properly consider his asserted mitigating factors. *United States v. Singleton*, 588 F.3d 497, 500-01 (7th Cir. 2009). The record shows that the district court did consider Toscano's mitigating evidence, as evidenced by the court's acknowledgment that Toscano was a "good man," unlikely to commit another criminal offense, and that he had an extremely difficult childhood in Mexico. After noting that those factors were "very compelling," the court determined that on balance, a substantial sentence was warranted in light of the seriousness of the defendant's offense. Contrary to Toscano's assertion that the court relied too heavily on the deterrence factor, the court's statements illustrate that the sentencing judge did consider all of the § 3553(a) factors and

imposed a reasonable sentence in conformity therewith.[2]  As "it is not our province to second

guess the district court's sentencing rationale," *United States v. Blue,* 453 F.3d 948, 954 (7th Cir.

2006), we decline to do so here.

AFFIRMED.

---

[2] That the district court placed significant weight on the guidelines does not indicate that the court treated them as "presumptively reasonable." *See United States v. Dale,* 498 F.3d 604, 611 (7th Cir. 2007) ("Of course, the district court can place significant weight on the guidelines without rendering the resulting sentence unreasonable.  The sentence imposed must be reasonable with respect to the factors enumerated in § 3553(a), and among those factors is the advisory guidelines.").