In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2592

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MATTHEW A. TURNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 4:07-cr-40084-MMM-JAG—**Michael M. Mihm**, *Judge.*

ARGUED MARCH 28, 2011—DECIDED JULY 11, 2011

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In January 2009, a jury con-
victed Matthew A. Turner for conspiracy to possess and
distribute at least five kilograms of cocaine and at
least fifty grams of crack cocaine, and for possession of
a firearm in furtherance of a drug trafficking offense.
Turner raises two issues on appeal, each for the first time.
First, he contends that he was wrongfully deprived of
his Sixth Amendment right to counsel of his choice

when the district court disqualified his retained attorney from the case. Second, Turner complains that the prosecutor's comments during closing argument invited the jury to draw an improper inference from the evidence and amounted to prosecutorial misconduct. We affirm. The district court did not plainly err by disqualifying Turner's attorney for a conflict of interest or by allowing the prosecutor's remarks, without objection, during closing argument.

I.  *Factual and Procedural Background*

We recount the facts in the light most favorable to the jury's verdict. See *United States v. Hill*, 552 F.3d 541, 543 n.1 (7th Cir. 2008). In September 2007, police monitoring a controlled drug delivery arrested defendant Turner and four others at a home on the south side of Chicago. Police obtained valid consent to search the house. Beneath the bathroom cabinets and kitchen sink they found large quantities of crack and powder cocaine, a large amount of cash, drug paraphernalia, cocaine packaging materials, and two firearms.

Turner and the others were indicted in the Central District of Illinois for conspiracy to possess and distribute at least five kilograms of cocaine. Turner retained a private defense attorney, Steven C. Rueckert. In August 2008, however, the district court disqualified attorney Rueckert in response to the government's "Notice of Potential Conflict of Interest." Turner was then assigned court-appointed counsel.

The case proceeded, and by October 2008 Turner faced a second superseding indictment charging him with Count I, conspiracy to possess and distribute at least five kilograms of cocaine and more than fifty grams of crack cocaine, see 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and Count II, use of a firearm in furtherance of a drug trafficking crime, see 18 U.S.C. § 924(c)(1)(A).

By the time of trial, Turner's four co-defendants had all pled guilty. Three of them testified about Turner's involvement in the cocaine trade, and the government presented additional physical evidence, as well as evidence of Turner's unexplained wealth. Turner took the stand on his own behalf. He testified that he had been involved in the cocaine trade but had stopped dealing just before the period charged in the indictment. Turner also called several character witnesses to testify that they had never seen him with drugs or a gun. During closing argument, Turner argued that his co-conspirators were using him as a patsy in order to obtain favorable treatment. The government responded by attacking Turner's credibility, characterizing his testimony about leaving the drug business shortly before the charged conspiracy began as "too convenient to be believed."

The jury found Turner guilty on both counts of the second superseding indictment. The district court sentenced Turner to life imprisonment on the cocaine charge and sixty months on the firearm charge. Turner appeals his convictions.

II. *Discussion*

A. *Sixth Amendment Right to Counsel of Choice*

Turner's first argument is that the disqualification of his retained attorney violated his Sixth Amendment right to be represented by counsel of his choice. We find no reversible error. Turner forfeited the issue, and the district court did not plainly err by removing attorney Rueckert from the case.

1. *The Facts*

Attorney Rueckert represented Turner until the district court disqualified Rueckert in response to the government's "Notice of Potential Conflict of Interest," filed in August 2008. The government had learned that Turner, who had not been gainfully employed for some time, obtained Rueckert's services by paying him $25,000 in cash, delivered by Turner's girlfriend while he was in jail. Intending to make an issue of Turner's unexplained wealth, including the attorney fee paid in cash, the government argued that Rueckert had landed "front and center as a witness in this case" and therefore could not continue to represent Turner. At a pretrial hearing held on August 13, 2008, the district judge raised the issue with the parties. After the government stated its position for the record, the following exchange occurred:

> THE COURT: Do I understand correctly you plan to call Mr. Rueckert as a witness?

[GOVERNMENT]: Yes.

THE COURT: I mean, obviously if you're permitted to do that, then he can't represent Mr. Turner. That's the bottom line. Mr. Rueckert, would you respond to this, please?

MR. RUECKERT: Well, Your Honor, I've read the motion and I have spoken to [the prosecutor] about this. I mean, if they're going to call me as a witness, I think the case law is pretty clear. I can't be both.

THE COURT: I agree with that. Obviously the question that needs to be asked before that or answered before that is [whether] it is appropriate for them to call you as a witness. So the question to you is based on what you have learned from them orally and based on their written pleadings, do you have a legal argument to make at this point that they cannot appropriately call you as a witness?

MR. RUECKERT: Well, obviously I can't talk about how the money was arranged or any of Mr. Turner's involvement in arrangement of the money. I can't do that. But I guess if part of their case is, you know, to prove up how much I got paid, based on the cases they've cited, I see no legal argument why they can't do that.

At the conclusion of this exchange, the district court disqualified attorney Rueckert from the case. At Turner's trial, the government did not actually call Rueckert to testify. The defense raised no objection about the choice of counsel issue until appeal.

2. *Standard of Review*

We generally review a decision to disqualify counsel for an abuse of discretion. *United States v. Bender*, 539 F.3d 449, 454 (7th Cir. 2008), citing *Wheat v. United States*, 486 U.S. 153, 164 (1988). Where a defendant and his attorney fail to preserve an argument by properly objecting, however, a different standard of review applies. A defendant's state of mind at the time he fails to object determines whether the failure constitutes waiver or forfeiture. "A waiver is 'the manifestation of an intentional choice not to assert [a] right,' distinguishing it from forfeiture, which is an accidental or negligent omission (or 'an apparently inadvertent failure to assert a right in a timely fashion')." *United States v. Walton*, 255 F.3d 437, 441 (7th Cir. 2001), quoting *United States v. Cooper*, 243 F.3d 411, 416 (7th Cir. 2001). While waiver extinguishes all appellate review of an issue, forfeited issues are reviewable for plain error. *Id*.

We need not decide here the defendant's state of mind at the time of his failure to object. The government conceded at oral argument that Turner's failure should not be considered a waiver of the issue. The government argued instead that the issue was forfeited and that we should review for plain error.

Turner, on the other hand, makes two arguments against a finding of either waiver or forfeiture. While he acknowledges the absence of any objection in the record, he contends that the Sixth Amendment right to counsel is so personal in nature that only the client himself, and not his attorney, could have forfeited it. We

are not persuaded. The ethical rules governing the legal profession prohibit lawyers from continuing to represent a client in many conflict of interest situations even if the client would prefer for the representation to continue. See, *e.g., Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir. 1983) (lawyer may not represent an adversary of his former client if the subject matter of the two representations is "substantially related"; rule encourages clients to feel comfortable sharing confidences with their attorneys); Illinois Rules of Professional Conduct 1.16(a)(2) (1990) ("A lawyer representing a client before a tribunal *shall withdraw from employment* (with permission of the tribunal if such permission is required) . . . if . . . the lawyer knows or reasonably should know that such continued employment will result in violation of these Rules") (emphasis added).[1] These rules are inconsistent with an assertion that the right to counsel of choice guarantees any client, including a criminal defendant, the *exclusive* right to decide when the attorney-client relationship begins and ends.

In a similar vein, Turner argues that the district court should have asked him personally whether he would like to waive the conflict in question. Again, we are not persuaded. It is well-settled that, under certain circum-

---

[1] Illinois amended its Rules of Professional Conduct for attorneys effective January 1, 2010, but we quote and discuss here the version of the rules in effect in 2008 when Rueckert was disqualified.

stances, a district court may remove defense counsel from the case even in the face of a criminal defendant's proffered waiver. See *United States v. Turner*, 594 F.3d 946, 952 (7th Cir. 2010) (reviewing cases). The district court was under no legal obligation to seek out a waiver it could have overridden, particularly where defense counsel agreed he was required to withdraw. Accordingly, we treat Turner's failure to object as a forfeiture and review for plain error.

On review for plain error, a convicted defendant must show that: (1) the error complained of actually occurred; (2) the error was clear or obvious; (3) the error affected his substantial rights (*i.e.,* he probably would not have been convicted absent the error); and (4) the error seriously impugned the judicial proceeding's fairness, integrity, or public reputation. *United States v. Tanner*, 628 F.3d 890, 898 (7th Cir. 2010), citing *United States v. Anderson*, 604 F.3d 997, 1002 (7th Cir. 2010).

The third prong of the plain error test—whether the error affected the defendant's substantial rights—calls for essentially the same inquiry as harmless error analysis. *United States v. Wheeler*, 540 F.3d 683, 690 (7th Cir. 2008), citing *United States v. Ross*, 77 F.3d 1525, 1540 (7th Cir. 1996). An argument can be made that the third prong should drop out of the plain error analysis where the error is "structural." The erroneous deprivation of the right to chosen counsel constitutes a structural error and entitles an aggrieved defendant to reversal without a showing of prejudice. See *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006) ("We have little trouble

concluding that erroneous deprivation of the right to counsel of choice, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as structural error."), quoting *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993) (quotation marks omitted). It is not a long step to argue that prejudice also should be presumed (or need not be shown independently) under the plain error standard. The Supreme Court, however, has specifically reserved the question of the application of the third plain error prong to structural errors. See *Puckett v. United States*, 129 S. Ct. 1423, 1432 (2009); see also *United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (citing *Puckett* on this point). We need not resolve that methodological issue definitively here because we find no sufficiently clear error.

There is a similar issue regarding the fourth prong of the plain error test when a structural error of the sort alleged here occurs. It seems no easier to determine whether an action with "unquantifiable and indeterminate" consequences on the course of trial proceedings "seriously impugned" those proceedings' fairness than it is to inquire whether it effectively prejudiced the defendant's case. Because we find no sufficiently clear error, however, we also do not reach this issue under the fourth prong of the plain error test.

### 3. *Analysis*

For an error to be "plain," it must be of such an obvious nature that "the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely

assistance in detecting it." *United States v. Frady*, 456 U.S. 152, 163 (1982). "It cannot be subtle, arcane, debatable, or factually complicated. It must be—plain; but it needn't be blatant." *United States v. Caputo*, 978 F.2d 972, 975 (7th Cir. 1992). We find no plain error here.

The Sixth Amendment gives the accused in criminal cases the right to hire attorneys of their choice. *Turner*, 594 F.3d at 948, citing *Wheat*, 486 U.S. at 159. The right has been regarded as "the root meaning of the constitutional guarantee" in the Sixth Amendment. *Gonzalez-Lopez*, 548 U.S. at 147-48, citing *Wheat*, 486 U.S. at 159. Even so, a defendant's choice of counsel may be overridden and counsel may be disqualified where an actual conflict of interest or a serious potential for conflict exists. *Wheat*, 486 U.S. at 163-64 (affirming refusal to accept defendant's waiver of attorney's "serious potential" for conflict of interest); accord, *Turner*, 594 F.3d at 952. A conflict that amounts to a breach of the code of professional ethics "obviously qualifies" as an actual conflict of interest of the sort that allows the trial court to disqualify counsel regardless of a defendant's offer to waive. *Turner*, 594 F.3d at 952.

Rules of professional conduct for attorneys have long recognized that having an attorney testify either for or against his client can put great stress on our system of justice. The specific issue here arose under the Illinois provision then governing when an attorney may be called as a witness other than on behalf of his client. The government's notice of potential conflict of interest relied on Illinois Rule of Professional Conduct 3.7(b), which stated in 2008:

> If a lawyer knows or reasonably should know that the lawyer may be called as a witness other than on behalf of the client, the lawyer may accept or continue the representation until the lawyer knows or reasonably should know that the lawyer's testimony is or may be prejudicial to the client.

The Central District of Illinois has adopted the Illinois Rules of Professional Conduct. Under the applicable version of Rule 3.7(b), attorney Rueckert faced a conflict that could amount to a breach of the code of professional ethics. As soon as he read the government's notice of potential conflict, he knew or reasonably should have known that he could be called as a witness against his client, at least unless there was a persuasive reason to prevent the government from doing so. Rueckert also knew or reasonably should have known that the testimony the government sought—about his client's unexplained wealth—would be prejudicial to his client. If the government planned, and was legally permitted, to call Rueckert as a witness against his client, he could not continue to represent him.

Turner argues on appeal that case law actually forbade the government from calling attorney Rueckert to testify under these circumstances, negating any alleged Rule 3.7(b) conflict. Turner relies on *United States v. Britton*, 289 F.3d 976 (7th Cir. 2002), where we said: "where evidence is easily available from other sources and absent extraordinary circumstances or compelling reasons, an attorney who participates in the case should not be called as a witness." 289 F.3d at 982, quoting

*United States v. Dack*, 747 F.2d 1172, 1176 n.5 (7th Cir. 1984) (quotation marks omitted).

In support of this point, Turner argues that the government could have introduced the same evidence of unexplained wealth—the $25,000 cash payment to attorney Rueckert—through his girlfriend, who delivered the sum on his behalf. Turner also calls the proposed attorney testimony "cumulative," insisting that the government could just as easily have brought his wealth to the jury's attention with evidence of his luxury vehicle purchases. Finally, Turner argues that the government's decision not to call attorney Rueckert to testify at trial demonstrates that he was not a necessary witness.

We are not persuaded. The fact that Rueckert did not testify at trial does not mean that his testimony did not appear necessary during pretrial proceedings. The issue was presented to the district court for decision long before trial. A district court faced with a potential conflict of interest must act "not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly." *Wheat*, 486 U.S. at 162. Given the facts available during the murky pretrial phase, we find no plain error such that the district court could have been deemed "derelict in countenancing" Rueckert's disqualification. See *Frady*, 456 U.S. at 163.

At the time the issue arose, the government was reasonably concerned that Turner's girlfriend would refuse to testify, meaning that the same testimony would not

in fact be available from an alternative source. While the government's case against Turner at trial turned out to be very strong, it was based in large part on cooperative testimony from Turner's co-defendants who pled guilty. As of the August 13, 2008 hearing when Rueckert was disqualified, they had not yet pled guilty. At that time, all evidence of unexplained wealth may well have seemed necessary to the government's case. These facts undermine Turner's argument that the government should not have expected to call Rueckert as a witness against Turner, so that he should not have been disqualified.

We do not take the disqualification of defense counsel lightly, especially when the same evidence might have been available through alternate sources or had limited probative value. See *United States v. Gearhart*, 576 F.3d 459, 464 (7th Cir. 2009); *Britton*, 289 F.3d at 982-83. We are wary of the potential for abuse that comes with allowing the government to disqualify the defendant's chosen attorney. The issue in this case would be closer if we encountered it, for example, on review of a disqualification order entered over a vigorous objection. In this case, however, the district court properly raised the issue with counsel, and the issue was promptly forfeited. We find no plain error in the district court's decision to disqualify attorney Rueckert.

B. *Closing Argument*

Turner's second issue on appeal is that comments made by the prosecutor during closing argument

amounted to prosecutorial misconduct because they invited the jury to draw an improper inference of his guilt for the charged crimes based on his admission of prior involvement in the drug trade.

1. *The Facts*

In his closing argument, Turner argued that he was innocent of the crime actually charged and that his former co-defendants, who testified against him in exchange for leniency, were just looking for someone to take the fall. Turner argued that his checkered past made him the perfect "patsy." This argument was based on Turner's own testimony. Taking the stand in his own defense, Turner claimed that, although he had been a cocaine dealer in the past, he stopped dealing in October 2005, just before the beginning of the conspiracy charged in the indictment. At that time, he said, the murder of his friend and business partner persuaded him that the risks were too high.

On rebuttal, the government argued that Turner was the one looking for a patsy. The government relied on telephone calls Turner made from jail while he was awaiting trial. Turner asked Carl Hopkins, one of his co-conspirators, to take the fall for the group's misdeeds. Recordings of these calls were admitted during trial. Next, the prosecutor commented on Turner's testimony:

> You heard his own words. You heard it. You heard him testify. There weren't just two drug dealers that testified here. It wasn't just Mr. Mejia, and it wasn't

just Mr. Hopkins. There were three. It was this Defendant. There was this Defendant who told the story that he was a drug dealer. He used to deal all kinds of drugs, made a lot of money, that he just put in a shoe box someplace, and kept it at his mom's house.

In 2005, coincidentally when this conspiracy is charged, that's when he quit and he didn't do anything any more, and he was completely out of it.

You saw his demeanor as he testified. You heard some of the things he said. And one of the things that you need to bring to the process is your common sense.

Ask yourself, does that make sense? It doesn't make any sense at all. Doesn't make any sense at all. It is awfully convenient, but it doesn't make any sense.

Turner did not object to this line of argument at the time. He now contends, though, that the prosecutor made a prohibited "once a drug dealer, always a drug dealer" argument, effectively asking the jury to convict him for this charged crime based on his involvement with similar activities in the past. See *United States v. Simpson*, 479 F.3d 492, 503 (7th Cir. 2007), abrogated in part on other grounds, *United States v. Boone*, 628 F.3d 927, 933 (7th Cir. 2010).

2. *Standard of Review*

Whether a prosecutor's comments to the jury rise to the level of prosecutorial misconduct depends initially

on whether the prosecutor's conduct was improper. *Simpson*, 479 F.3d at 503, citing *United States v. Hale*, 448 F.3d 971, 986 (7th Cir. 2006). If so, we then ask whether the conduct prejudiced the defendant. *Id*. When a defendant objects for the first time on appeal that a prosecutor made improper comments during closing arguments, we review only for plain error. *United States v. Bowman*, 353 F.3d 546, 550 (7th Cir. 2003). Because Turner did not object at trial, he must establish "not only that the remarks denied him a fair trial, but also that the outcome of proceedings would have been different absent the remarks." *Id.*, quoting *United States v. Sandoval*, 347 F.3d 627, 631 (7th Cir. 2003); *United States v. Nunez*, 532 F.3d 645, 653 (7th Cir. 2008). An error is not plain unless it is of such an obvious nature that the trial judge and prosecutor were "derelict in countenancing" it, even absent the defendant's timely objection. *Frady*, 456 U.S. at 163.

### 3. *Analysis*

A district court has "considerable discretion" in supervising the arguments of counsel. *United States v. Amerson*, 185 F.3d 676, 685-86 (7th Cir. 1999). In this case, the district court was not derelict in allowing the prosecutor's remarks without objection. We find no plain error.

Turner's argument that the remarks were impermissible relies on *United States v. Simpson*, 479 F.3d 492. In that case, an FBI agent testified that the defendant confessed to working as a cocaine dealer for several years, and to

having made deliveries for a named individual. When the agent asked about a specific transaction with that named individual, the defendant said he could not remember. *Id*. at 495. The prosecutor referred to these admissions during closing argument, stating:

> And you know what the defendant told him: Yes, I'm a crack dealer. I've been a crack dealer for three to four years, and I could have done this transaction, 2 1/4 ounces, on behalf of Michael Hatton, but I don't remember, because my view of the inference, the inference being he's done so many that he couldn't remember this one.

*Id*. Unlike Turner in this case, Simpson objected immediately. We agreed with the defendant that these remarks asked the jury to draw an improper inference. *Id*. at 503. The argument did not refer to the facts of the transaction actually charged and quite plainly asked the jury to consider the defendant's admission of other crimes as evidence of the one he could not remember. *Id*.

This case is much less clear-cut. A canonical statement in this field is that, while a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88 (1935). The operative portion here is that the prosecutor was allowed to strike hard blows. "Once a drug dealer, always a drug dealer" arguments are considered foul blows, but "so long as the evidence supports the comments, prosecutors may speak harshly about the actions and conduct of the accused." *United States v. Durham*, 211 F.3d 437, 440 (7th Cir. 2000), citing *United States v. Cook*, 432 F.2d 1093, 1106-

07 (7th Cir. 1970). A comment on the defendant's credibility that is supported by the evidence is a hard blow, but a fair one. "Where the character and credibility of the defendant are at issue and the evidence allows the inference that the defendant has been less than truthful, the prosecutor does not err in closing argument by referring to the defendant as a liar." *United States v. Catalfo*, 64 F.3d 1070, 1080 (7th Cir. 1995).

Turner placed his character and credibility at issue with his own testimony and the testimony of the other witnesses he called. The prosecutor's comments were intended to make the jury reject that testimony in light of the weight of evidence for the government. The theme throughout was that Turner's story was just too convenient to be believed. It is acceptable under these circumstances for a prosecutor to argue that the defendant was lying. It is no less acceptable to highlight, through rhetorical questions, the improbable and convenient nature of his testimony, leaving the jurors to draw their own conclusions about his truthfulness.

The prosecutor's remarks were, at the very least, not so clearly improper that the trial judge was derelict in his duty for countenancing them, even absent any timely objection by the defense. There was no plain error, and we need not proceed to an analysis of any possible prejudicial effect.

The judgment of the district court is AFFIRMED.